CHARLES PEAVEY *versus* JAMES BROWN *&* al.

Before the Revised Statutes were in force, if the payee of a note, otherwise barred by [the statute of limitations, "*promised to renew the note, and appointed a time to do it*" within six years next before the commencement of the suit, it was thereby taken out of the operation of that statute.

ASSUMPSIT on a promissory note given by the defendants to the plaintiff, dated Sept. 16, 1825, payable in one year with interest. Two payments had been made and indorsed thereon, the last of which was under date of March 4, 1828.

Peavey *v.* Brown.

The action was commenced Jan. 22, 1839. The defendants relied on the statute of limitation.

The parties agreed upon a statement of facts, which appeared in the depositions of J. B. Clark, H. S. Favor and L. Morang, taken in 1840. The Court were to make such inferences from the testimony contained in the depositions, as a jury would be authorized to make. One ground taken by the plaintiff was, that the defendant resided at Campobello, in New Brunswick, when the note was made and has not been openly in this State since the note fell due. The testimony and arguments on this point are omitted, as the decision did not rest upon it.

A new promise was also relied on. On this point the deponent stated, that the plaintiff " asked me, two years ago this fall, to call upon James Brown, and ask him to pay a note which he, Peavey, had against him. I asked Mr. Brown if he would take up this note, and give a new one, he said he would, and a time was appointed for it to be done, but he afterwards got some one to look at or over the note, and then refused to give the new one, and said he would not pay the old one. He gave for his reasons, that he was bound on it with his father-in-law and brother-in-law, that he had paid his part of it, that it was out of date, that he had been at Eastport several times after it was out of date, and General Peavey had not asked him to pay it. I understood also, though I cannot exactly tell, that the Schoolmaster had overhauled the calculations of interest upon the note, that compound interest had been computed upon it, and that this furnished another objection to his paying it."

*D. T. Granger,* for the plaintiff, remarked that the testimony of the deponent related to several distinct conversations with the defendant. Each conversation is to be considered by itself, and the admissions and promises made at one time are not to be controlled by any denials at another and different time. In the first conversation Brown made an express promise to take up the note now in suit, and give a new one for it, and even went so far as to fix the time, when it should be

done. This seems to be all the law requires to revive a demand once barred by the statute ; here is an acknowledgment that the note was an existing demand upon the defendants, due and unpaid, involved in the express promise to settle it. An acknowledgment made to a mere stranger is sufficient, and therefore it is wholly immaterial whether the witness did or did not exceed the powers given to him as agent. Besides, the plaintiff ratified his acts, and the defendant cannot make the objection. He however acted as requested.

*Chadbourne & S. S. Rawson,* for the defendants, said that the deponent did not ask Brown for payment, but for a new note, and Brown said he would give it. If he had given it there would have been no consideration for the promise. In that conversation he did not promise to pay the old note or the new note, if given. In asking for a new note, the deponent did not conform to his instructions, but departed from them.

It does not appear that Morang had the note with him which he wished to have renewed, or whether it was the note in suit, or what note. If the conversation referred to this note it does not appear how much of it was at one time and how much at another. The plaintiff must make out his case, and not leave it uncertain. The burthen is on him.

As there was no express promise to pay, the most that can be relied on is an implied one. And an implied one can only be created by the fact of a positive and unqualified admission of the debt; but if the acknowledgment is accompanied by any circumstances or expressions, which repel the idea of an intention or willingness to pay, no implied promise is created, and the debt is not revived. Angel on Lim. 247 ; *Porter* v. *Hill,* 4 Greenl. 41 ; *Jones* v. *Moore,* 5 Binney, 530 ; 3 Bingh. 329 ; 3 Greenl. 97.

The opinion of the Court was drawn up by

TENNEY J. — The note by its terms was barred by the statute of limitations, when this suit was commenced, and the defendants rely upon that statute. The plaintiff attempts to avoid that defence, by showing a new promise on the part of

one of the defendants within six years before the action was brought. Another ground is also taken by the plaintiff, which it is unnecessary to consider.

To determine, whether a new promise was made or not we must look at what took place at the time, when it is said to have been made, and ascertain the meaning. of the party, attempted to be charged. It is well settled, that previous to the time, when the Revised Statutes took effect, an express promise, or one made upon a condition, which has been performed, or a clear, unambiguous, and unqualified acknowledgment of the debt, as existing and due at the time of such acknowledgment, though such promise or acknowledgment be verbal, was sufficient to take the case from the operation of the statute. *Perley* v. *Little*, 3 Greenl. 97 ; *Porter* v. *Hill*, 4 Greenl. 41. The acknowledgment must be unaccompanied with any declaration, which expresses or implies an intention in the one who makes it not to pay, and to rely upon his legal rights. It is to be determined too, by all, which he said at the time, when taken together. *Clements* v. *Williams*, 7 Cranch, 74 ; *Bangs* v. *Hall*, 2 Pick. 368 ; *Whitney* v. *Bigelow*, 4 Pick. 110 ; *Bailey* v. *Crane*, 21 Pick. 323.

Let us apply these principles to the note in suit. The evidence relied upon by the plaintiff is, " Charles Peavey asked me two years ago this fall to call upon James Brown, and ask him to pay a note, which he, Peavey, had against him. I asked Mr. Brown, if he would take up this note, and give a new one ; he said he would and a time was appointed, for it to be done."

It is argued for the defendants, that the witness was employed to put one specific question to Brown, and the answer was given to another inquiry and therefore not binding. It does not distinctly appear, whether the defendant at the time referred to, had possession of the note. If it were put into his hands, the request of the plaintiff, that he would call on the defendant, Brown, would imply an authority, to receive the amount, and a promise to one thus empowered would be equally valid, as if made to the plaintiff. The acknowledgment however, if made would be sufficient, on the authority of decided

cases, though the same, was to one not authorized to make any request of the debtor. *Whitney* v. *Bigelow*, 4 Pick. 110.

Was the evidence of the promise to renew, unambiguous? The deponent testifies, in addition to the language already quoted, " but he afterwards got some one to look at or over the note and then refused to give the new note, &c." In order to relieve the note from the effect of the statute, the burden is on the plaintiff to produce satisfactory evidence. The defendants' counsel insists, that as " afterwards," will alike apply to a subsequent part of the same conversation, and to a conversation at another subsequent time, the language, here relied upon, when taken in connexion with the other, is ambiguous and equivocal, and is therefore insufficient. The term " afterwards" is certainly susceptible of both these meanings, and we must look at the whole sentence in which it stands, to ascertain the intention of the witness.  And this we are to do, by the agreement of the parties, in the same manner that a jury would do under the instruction of the Court.  No reason can be imagined, why the defendant, Brown, should not have looked at the note himself, if it were present, instead of employing another to do it.  If it were not present, it would be very unnatural to suppose, that a messenger would have been sent to the place, where it was, and that he should have examined it and made report, before the parties to the conversation separated.  We think, when the whole is taken together, that " afterwards" refers to a subsequent time and a different conversation.

Again, it is urged, that Brown may have referred to another note, than the one in suit.  It is not pretended, that there was another, and without proof, of any besides the one in suit, we think a jury would be authorized to infer, that this was the one referred to.  The deponent testifies, that he asked him, if he would renew *this* note.

The want of consideration is not a sufficient objection to the effect of the acknowledgment.  The same could be urged with equal propriety where an express promise to pay, is made.

What then is the meaning of the language used?  " He promised to renew the note, and a time was appointed to do it."

This must be taken to mean, that at the time appointed, he would take up the note referred to, by giving his other note, for the amount due. Would a person, not intending to pay the note use this language? Did he not by promising to give a note, which if given would bind him for the whole sum claimed, convey to the mind an admission, that the note was still due, and an existing debt against him? Will a man promise to give his note, for what he does not intend to say he owes? Suppose he had said, that he would take up that note, by one of another person, or of a bank, would it not be an acknowledgment of indebtedness? If he had given such a note, he surely would have been holden thereon. And when he promised to do that, which if done would bind him, we cannot conceive, that the language did not clearly imply that the note was unpaid. He had some meaning, and we cannot doubt that it was a willingness to consider himself liable. *Bangor Bridge* v. *McMahon,* 1 Fairf. 478.